**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD W. MONINGTON,**

                    **Plaintiff,**                    1:10-cv-1553
                                                                         (GLS/RFT)

                      v.

**CSX TRANSPORTATION, INC.,**

                    **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Forceno, Goggin & Keller, P.C.<br>1528 Walnut Street<br>Suite 900<br>Philadelphia, PA 19102 | RAYMOND P. FORCENO, ESQ. |
| **FOR THE DEFENDANT:** | |
| Flynn & Wirkus, PC<br>400 Crown Colony Drive<br>Suite 200<br>Quincy, MA 02169 | MICHAEL B. FLYNN, ESQ.<br>HEATHER M. GAMACHE, ESQ. |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Richard W. Monington commenced this negligence action

against his employer, defendant CSX Transportation, Inc. (CSX), under the

Federal Employers' Liability Act (FELA or "the Act").[1]  (*See* Compl., Dkt. No. 1.)  Monington alleges, among other things, that CSX and/or its agents, servants, workmen and/or employees were negligent by failing to: (1) provide him with a safe work place; (2) comply with CSX safety rules and regulations; and (3) comply with CSX operating rules and regulations. (*See id.* ¶ 8.)  Pending is CSX's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (*See* Dkt. No. 22.)  For the reasons that follow, the motion is granted.

## II. Background

### A. Facts[2]

On March 29, 2007, Monington injured his left knee[3] while working as a carman for CSX.  (*See* Def.'s Statement of Material Facts (SMF) ¶¶ 5-6, Dkt. No. 22, Attach. 2.)  Before the accident in question, Monington was connecting the air hoses of a series of railcars when he came to a bathtub

---

[1] *See* 45 U.S.C. §§ 51-60.

[2] Unless otherwise stated, the facts are undisputed.

[3] In his complaint and response to interrogatories, Monington also contends that he suffered injuries to his right knee and left ankle; however, during his deposition, he claimed that only his left knee was injured.  (*See* Compl. ¶ 9; Dkt. No. 22, Attach. 9 ¶ 2; Dkt. No. 22, Attach. 10 at 8.)

2

gondola in the line for the same purpose.[4]  (*See* Dkt. No. 22, Attach. 10 at 5.)  Because he was riding in an all-terrain vehicle (ATV) that required him to ride along the right side of the track—and the bathtub gondola's air hoses and angle cock were on the left side[5]—Monington had to "cross over" to connect the hoses.  (*See id.* at 5, 13, 15)  The bathtub gondola was "equipped with two sill steps, a handrail and two hand-holds."  (Def.'s SMF ¶ 7; *see* Dkt. No. 22, Attach. 12.).  During his descent from the railcar, apparently after connecting the air hoses, Monington's right hand, which he was using to grip a handrail, became "'tingly'" and he lost his grip, falling from the bathtub gondola.  (Def.'s SMF ¶¶ 8-9.)  At the time of the accident, Monington was exceedingly familiar with climbing over railcars and had been "well" trained by CSX "on how to descend a railcar."  (*Id.* ¶¶ 13-15.)  Monington was also "required to know and adhere to the applicable safety rules," (*id.* ¶ 15), which included mandates that an employee getting on or off of equipment "[m]aintain three points of contact" and "[m]aintain a handhold until [his] feet are firmly positioned."  (Dkt. No.

---

[4] A "bathtub gondola" is a specific type of railcar that is "half round" and "shaped like a bathtub."  (Dkt. No. 22, Attach. 10 at 5.)

[5] There is some discrepancy in the record as to which side Monington traveled with the ATV, however, it is clear that he had to cross over the bathtub gondola to hook its air hoses. (*See* Dkt. No. 22, Attach. 10 at 5, 13, 15.)

3

22, Attach. 14.)

Approximately five months after falling, Monington told an orthopaedic surgeon during a consultation that he injured his knee on March 29, 2007 because his right hand, which is affected by carpal tunnel syndrome, "g[a]ve way." (Dkt. No. 22, Attach. 16.) Thereafter, on April 22, 2008, Monington settled a claim with CSX regarding his carpal tunnel syndrome-afflicted right hand for $15,000. (*See* Def.'s SMF ¶ 19; Dkt. No. 22, Attach. 15.) The "Settlement and Final Release" acknowledges that certain occupational hazards "caused [Monington] to suffer from right carpal tunnel syndrome including any disorder of any type or origin or any related conditions, illness or injury resulting therefrom or relating thereto." (Dkt. No. 22, Attach. 15 at 1.) The settlement agreement also purports to release CSX from "any and all liability for all claims, actions or controversies described" in the document. (*Id.*)

## B.  Procedural History

Monington commenced this action in the District Court for the Eastern District of Pennsylvania on September 10, 2010, claiming

4

violations of FELA.[6]  (*See* Compl., Dkt No. 1.)  The Eastern District of Pennsylvania granted a motion by CSX to transfer the case to this court in November 2010 and the matter was thereafter transferred.  (*See* Dkt. Nos. 10-11.)  Following discovery, CSX moved for summary judgment.  (*See* Dkt. No. 22.)

### III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09–cv–652, 2011 WL 5599571, at *4 (N.D.N.Y. Nov. 17, 2011).

### IV.  Discussion

CSX argues that it is entitled to summary judgment because Monington has failed to present "any evidence of an unsafe workplace." (Dkt. No. 22, Attach. 1 at 3-7.)  More particularly, CSX contends that Monington can show only that he was injured while working.  (*See id.* at 3.) All of Monington's claims, CSX asserts, rest upon accusations that were resolved against him by his own testimony during a deposition—namely,

---

[6] Prior to commencing federal litigation, Monington brought an action in Pennsylvania state court, (*see* Dkt. No. 22, Attach. 5); that action was ultimately dismissed on forum non conveniens grounds.  (*See* Def.'s SMF ¶¶ 1-2; Dkt. No. 22, Attach. 6.)

whether: (1) CSX "negligently failed to provide . . . power grips and grip points"; (2) "it was unreasonably unsafe for [Monington] to climb over railcars"; and (3) CSX "should have developed a safe means of climbing and descending steps." (*Id.* at 3-4.) Alternatively, CSX asserts that, should the court find a genuine issue of material fact as to whether Monington presented sufficient evidence of negligence, the absence of evidence regarding causation requires dismissal of the complaint. (*See id.* at 6-7.) CSX also alleges that Monington released it from liability "from any and all injuries resulting from his right carpal tunnel syndrome" and, thus, summary judgment may be granted on that independent basis as well. (*Id.* at 8-10.)

    Monington counters that, given the plaintiff-friendly nature of the FELA, his complaint can be dismissed only if there is "'zero probability'" of CSX negligence or that any such negligence contributed to his injury. (Dkt. No. 26, Attach. 2 at 1.) Monington further contends that a genuine issue of material fact exists on the question of whether CSX was negligent. (*See id.* at 2-3.) Specifically, he claims that a jury could infer that, by CSX requiring him to use an ATV to inspect railcars, instead of permitting him to walk, he was forced to climb over railcars while inspecting them and CSX

6

has potentially "sacrificed the safety of their [sic] employees" for the sake of speeding up inspections. (*Id.* at 2-3.) Monington has offered nothing in response to CSX's arguments regarding causation or whether he released CSX from liability. The court agrees with CSX's primary argument and, therefore, grants the motion.

FELA, a broad remedial statute that must be construed liberally in order to effectuate its purposes, *see Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1202 (2d Cir. 1994), imposes liability on railroad employers for injuries suffered by their employees "resulting in whole or in part from the negligence of any of the officers, agents, or employees of [the railroad]," 45 U.S.C. § 51. In light of its broad remedial nature, FELA "creat[es] a relaxed standard for negligence as well as causation." *Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999) (internal quotation marks and citation omitted). However, "FELA is not a strict liability statute and the fact that an employee is injured is not proof of negligence." *Id.* (internal citation omitted).

"The Act requires an employer to provide its employees with a reasonably safe place to work." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76 (2d Cir. 1993) (citations omitted). That duty is breached when the

7

employer fails to exercise reasonable care in protecting its employees despite the fact that it knew or should have known of a potential hazard in the workplace. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). In evaluating causation, the question is whether the proof justifies a conclusion that the employer's negligence "played any part, even the slightest, in producing the injury." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).

Turning to the interplay between the Act and Fed. R. Civ. P 56, an employer seeking summary judgment on FELA claims has "a particularly heavy burden." *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 514 (S.D.N.Y. 2000). Negligence and causation are factual issues and, "[a]s with all factual issues under the FELA, the right of the jury to pass on [them] must be liberally construed." *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 85 (2d. Cir. 1989). Thus, "[u]nder the FELA, 'the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'" *Gadsden v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207, 209 (2d Cir. 1998) (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994)).

Here, CSX has met its heavy burden. Monington alleges in his

8

complaint that CSX's negligence consisted of the following:

> a) failure to provide [him] with a safe place to work . . . ; b) failure to comply with safety rules and regulations . . . ; c) failure to comply with operating rules or regulations . . . ; d) negligence of [CSX]'s agents, servants, workmen and/or employees; e) negligence at law; and f) otherwise failing to exercise due and adequate care under the circumstances.

(Compl. ¶ 8, Dkt. No. 1.)  As illuminated by Monington's response to interrogatories, he more specifically alleges that CSX:

> failed to suspect, correct and detect hazards in the workplace[,] . . . allowed unsafe working conditions to exist and persist without exercising its affirmative obligation to inspect and correct same[,] . . . required [Monington] to climb over . . . rail cars to attach hoses without aid of power grips/grip points/hand or foot holds[, and] . . . reduced [the] workforce creating conditions that led to [Monington]'s injuries.

(Dkt. No. 22, Attach. 9 ¶¶ 13-15.)  In order to abate the supposed hazards, Monington contends that CSX "should have developed a safer means of climbing/descending steps, have more workers, train workers, [and/or] develop a safe means of attaching hoses to cars where the hoses protocol connection points are not aligned or on the same side of equipment."  (*Id.* ¶ 24.)  Each of Monington's claims, and his corresponding theories of negligence, are belied by the proof before the court.

9

During his deposition, Monington admitted that the bathtub gondola was properly equipped with grip points—namely, handholds and sill steps. (*See* Dkt. No. 22, Attach. 10 at 17.) A photo of that railcar, which Monington marked during his deposition with exactly where he placed his hands and feet before he fell, clearly depicts the grip points too. (*See id.* at 9-11; Dkt. No. 22, Attach. 12.) It is also clear that climbing and descending railcars was part and parcel of Monington's job. (*See* Def.'s SMF ¶ 13.) Indeed, a carman employed by CSX is required to inspect railcars and, in so doing, must "climb." (*See* Dkt. No. 22, Attach. 13.) Monington also admits that he was well trained by CSX on how to properly descend a railcar and was further required to follow safety rules, some of which apply to getting on or off equipment, that had been previously provided to him. (*See* Def.'s SMF ¶ 15; Dkt. No. 22, Attach. 14.)

In addition to the foregoing, which seriously undermines his allegations, Monington explained that, while inspecting railcars, he regularly climbs "up and down, up and down, up and down . . . to check hand brakes and so on and so forth" and he also crosses over approximately ten railcars out of the one hundred he inspects per shift.

(Dkt. No. 22, Attach. 10 at 14.)[7]  Moreover, Monington attributes his fall to his hand giving out from carpal tunnel syndrome.  (*See* Dkt. No. 22, Attach. 10 at 7, 12, 16; Dkt. No. 22, Attach. 16.)  Thus, despite the relaxed standards of negligence and causation applicable to this case, CSX has shown that, based upon Monington's allegations, "there is absolutely no reasonable basis for a jury to find for [him]."  *Gadsen*, 140 F.3d at 209 (internal quotations marks and citation omitted).  Indeed, it is clear that Monington's injury, unfortunate as it is, was not the result of any negligence on the part of CSX.

Turning to Monington's sole contention—which he raises for the first time in response to CSX's motion—that he was required by CSX to use an ATV and was, thus, subjected to unsafe working conditions relevant to this case, (*see* Dkt. No. 26, Attach. 2 at 2-3), even if his allegation[8] is true, it

---

[7] Monington also indicated on an incident report that no one was "at fault" relevant to his fall and that he had a "safe place in which to work."  (*See* Dkt. No. 22, Attach. 11.)  During his deposition, however, Monington explained that he only indicated as much on the report because he "didn't want [CSX] to think [his co-worker] had anything to do with it."  (Dkt. No. 22, Attach. 10 at 16.)

[8] Monington specifically claims that a genuine issue of material fact exists on the issue of "whether a reasonable jury could find that [CSX] should have foreseen or anticipated that employees required to climb over cars to attach hoses would be exposed to unreasonable risk of falling."  (Dkt. No. 26, Attach. 2 at 2.)  More particularly, Monington argues that being required by CSX to use an ATV prevented him from accessing one of the sides of the railcar and necessitated his climbing over that railcar—who's air hoses he could have accessed from the ground if he had been walking—from which he fell.  (*See id.*)  The court is not inclined to give credence to this assertion because it is raised for the first time in response to CSX's

11

fails to raise a genuine issue of material fact.  This is so because it was still necessary for Monington to constantly climb cars to perform his duties, which included inspecting and/or replacing air hoses, as a carman.  (*See* Dkt. No. 22, Attach. 13.)  Finally, in light of the foregoing, the court need not address the release—the validity of which is governed by federal law, *see Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 361 (1952), and the interpretation of which is informed by principles of state contract law, *see Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993)—and its effect on this litigation.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that CSX's motion for summary judgment (Dkt. No. 22) is **GRANTED** and all claims against CSX are **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

---

summary judgment motion, *see Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010).  But, in any event, for the reasons stated above, the newly-raised argument does not demonstrate a genuine issue of material fact requiring denial of CSX's motion.

March 6, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court